**No. 93-280C**
**(Senior Judge Smith)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**FRANK P. SLATTERY, JR., et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION

---

**STUART E. SCHIFFER**
**Deputy Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**F. JEFFERSON HUGHES**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 305-3067**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**

**SCOTT D. AUSTIN**
**WILLIAM G. KANELLIS**
**Attorneys**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**

**October 25, 2006**

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES . . . . . ii

ARGUMENT . . . . . 1

I. Standard Of Review . . . . . 1

II. Count II Should Be Dismissed As Part Of The Court's Final Judgment . . . . . 3

A. Plaintiffs Waived The Allegations Of Count II In The Parties' Summary Judgment Briefing . . . . . 4

B. Plaintiffs Abandoned Count II In Their Post-Trial Briefing And Closing Argument Upon Liability . . . . . 5

C. This Court's Opinion Upon Liability Did Not Address Count II . . . . . 7

III. The Final Judgment Needs To Be Clarified With Respect To The "Gross-Up" Issue . . . . . 9

IV. The Final Judgment Needs To Be Clarified With Respect To Receivership Claims . . . . . 11

CONCLUSION . . . . . 12

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

Brewer v. Purvis, 816 F.Supp. 1560 (M.D. Ga. 1993), aff'd, 44 F.3d 1008 (11th Cir.), cert. denied, 115 S.Ct. 1965 (1995) . . . . . 5

Christian v. United States, 49 Fed. Cl. 720 (2003), rev'd in part on other grounds, 337 F.3d 1338 (Fed. Cir. 2003) . . . . . 11

Coconut Grove Entertainment, Inc. v. United States, 46 Fed. Cl. 249 (2000) . . . . . 2

Finch v. Hughes Aircraft Co., 926 F.2d 1574 (Fed. Cir. 1991) . . . . . 4

Fru-Con Construction Corp. v. United States, 44 Fed. Cl. 298 (1999) . . . . . 2

Harvey v. District of Columbia, 949 F. Supp. 878 (D.D.C. 1996) . . . . . 1

Peters v. Welsh Dev. Agency, 920 F.2d 438 (7th Cir. 1990) . . . . . 9

Principal Mutual Life Ins. Co. v. United States, 29 Fed. Cl. 157 (1993) . . . . . 2

Slattery v. United States, 53 Fed. Cl. 258 (2002) . . . . . 7, 8

Slattery v. United States, 69 Fed. Cl. 573 (2006) . . . . . 8

Southern Nevada Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp. 1104 (D. Nev. 1989) . . . . . 5

Swedish Am. Hosp. v. Midwest Operating Engineers Fringe Benefit Funds, 842 F. Supp. 1039 (N.D. Ill. 1993) . . . . . 5

Valluzzi v. United States Postal Service, 775 F. Supp. 1124 (N.D. Ill 1991) . . . . . 5

Zucker v. Ernst & Young, 14 F.3d 477 (9th Cir. 1994) . . . . . 10

### STATUTES & REGULATIONS

12 U.S.C. § 1821(a)(5)(B) . . . . . 10

12 U.S.C. § 1821(d)(11) . . . . . 11, 12

GAO Office of Gen. Counsel, Principles of Fed. Appropriations Law, Vol. III, Chapter 14 . . . . . . . . . . 11

10 Wright, Miller & Kane, Federal Practice & Procedure § 2651 . . . . . . . . . . 9

11 Wright, Miller & Kane, Federal Practice & Procedure § 2810.1 (2d ed. 1995) . . . . . . . . . . 1, 2

22 U.S. Op. Off. Legal Counsel 141, 1998 WL 1180050 (July 22, 1998) . . . . . . . . . . 10

RCFC 52(b) . . . . . . . . . . 1

RCFC 59(a)(1) . . . . . . . . . . 1

RCFC 60(b)(1) . . . . . . . . . . 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FRANK P. SLATTERY, JR., et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 93-280C** |
| | ) | **(Senior Judge Smith)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

Pursuant to Rules 52(b), 59(a)(1) and 60(b)(1) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully requests reconsideration and clarification of this Court's final order dated October 11, 2006, and final judgment dated October 12, 2006. Specifically, we request reconsideration of a finding of breach with respect to Count II of Slattery's first amended complaint, and seek clarification of those portions of the final judgment that relate to a potential "gross-up" of the award for taxes and to the receivership claims. The motion for reconsideration is appropriate because, contrary to footnote 2 of the Court's final order, the allegations in Count II of the first amended complaint were not decided by the Court's liability decision, and were also waived and later abandoned by plaintiffs in the proceedings upon liability. Additionally, the Court's final order omits to provide necessary instructions for the Government to pay the final judgment, so clarification is necessary.

**ARGUMENT**

**I. Standard Of Review**

Motions for reconsideration or alteration of a Court's decision are not routinely granted. E.g., Harvey v. District of Columbia, 949 F. Supp. 878, 879 (D.D.C. 1996); see also 11 Wright,

Miller & Kane, Federal Practice & Procedure § 2810.1 (2d ed. 1995). To prevail on such a motion in this Court, a litigant must show "extraordinary circumstances" which justify relief. Fru-Con Construction Corp. v. United States, 44 Fed. Cl. 298, 300-01 (1999). A litigant must make this showing by either: (1) establishing a clearly apparent or obvious error of law or mistake of fact in the Court's ruling that renders the decision manifestly unjust; (2) establishing a change in controlling law that might alter the Court's decision; or (3) proffering new evidence that was not available at the time of trial. Id.; Coconut Grove Entertainment, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); 11 Wright, Miller & Kane, Federal Practice and Procedure § 2810.1.

A party may not rehash old arguments or relitigate issues previously before the Court. See Coconut Grove Entertainment, 46 Fed. Cl. at 255; Principal Mutual Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993). Nor may a party present new evidence that could have been presented at trial, for "the litigation process rests on the assumption that both parties present their case once, to their best advantage." Fru-Con Construction, 44 Fed. Cl. at 301 (internal quotation marks and citation omitted). "Put simply, the rulings of a court are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Id. (internal quotation marks and citation omitted). But if a party can show an error of law or a mistake of fact material to the Court's decision, reconsideration of a Court's judgment is warranted. See Fru-Con Construction, 44 Fed. Cl. at 300-01; Coconut Grove Entertainment, 46 Fed. Cl. at 255.

## II. Count II Should Be Dismissed As Part Of The Court's Final Judgment

We respectfully seeks reconsideration of the Court's final judgment incorporating Count II of the first amended complaint in its final judgment, the rationale for which incorporation is set forth in footnote 2 of this Court's final order, filed October 11, 2006:

> Defendant requests that Count II also be dismissed. Defendant's Opposition to Plaintiffs' Proposed Order, footnote 1. However, the Court has held in its opinion that the 1991 contract was an effect of the 1988 breach. Plaintiffs were forced into this contract by the Government under threat of personal liability owing to their status as directors. Therefore, far from being a contract that absolved the Government, it is a further breach.

This statement is inconsistent with the Court's previous ruling upon liability. While the Court's August 14, 2002 opinion on liability did hold that the 1991 Written Agreement was a breach of contract, this holding did not relate to Count II's allegations. Instead, Count II alleges that the 1991 Written Agreement "constitutes a binding contract" that "requires the parties to renegotiate the contract should the Congress take away Meritor's contractual right to treat supervisory goodwill as a regulatory capital asset" and which was breached when the "FDIC failed to renegotiate the 1991 Written Agreement, as that agreement expressly requires." Count II concludes that the alleged breach of the 1991 Written Agreement "proximately caused the Pennsylvania Secretary of Banking to seize Meritor, and to appoint a receiver for the institution, thereby causing harm to the institution, to the plaintiff, and to every other shareholder of the institution." 1st Amend. Compl. ¶¶ 78-85.

As noted in the Court's final order, in our opposition to Slattery's proposed final order, we had requested that the Court dismiss Count II. We did so because plaintiffs waived this argument during briefing of the motions on summary judgment by not responding to our

arguments, and later abandoned the allegations of Count II during the trial upon liability to support their assertions that Meritor's pre-existing breach of the 1991 Written Agreement did not excuse the FDIC's breach in 1992. As a result, the Court did not decide Count II after the trial upon liability. Thus, footnote 2 of the Final Order would, if not corrected, add a fourth "breach" to the Court's liability findings, apparently by mistake.

### A. Plaintiffs Waived The Allegations Of Count II In The Parties' Summary Judgment Briefing

Plaintiffs neglected to pursue the theory in Count II throughout the liability proceedings. In Slattery's January 19, 1999 memorandum in support of plaintiffs' motion for partial summary judgment at p. 72, plaintiffs concluded by asking the Court "to find that FDIC breached the parties' 1982 agreement by failing to treat Meritor's supervisory goodwill as regulatory capital" in 1988, 1991 and 1992. There was no mention of a breach of the 1991 Written Agreement.

Furthermore, our motion for summary judgment, filed the same day, asserted at pp. 35-37 that the allegations of Count II should be dismissed because the 1991 Written Agreement was a regulatory agreement outside of the jurisdiction of the Tucker Act and that, in any case, the Written Agreement had not been breached by the Government. Slattery's March 3, 1999 opposition to our motion, while it did take issue with our arguments for dismissing the non-breach counts of the first amended complaint, failed to counter our assertions that Count II should be dismissed. See pl. opp. to def. mot. for summ. judg. at 33-42.

By failing to respond to our argument, Slattery conceded that there was no potential for Government liability under Count II. Failure to respond to a summary judgment argument implicitly concedes the argument. See Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1576-77

(Fed. Cir. 1991); Brewer v. Purvis, 816 F.Supp. 1560, 1579 (M.D. Ga. 1993) ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue."), aff'd, 44 F.3d 1008 (11th Cir.), cert. denied, 115 S. Ct. 1965 (1995); Southern Nevada Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp. 1104, 1109 (D. Nev. 1989) ("The plaintiffs, by failing to respond to Arco's [the defendant's] argument in their opposition paper, have implicitly conceded that . . . [defendant's argument] . . precludes liability."); Swedish Am. Hosp. v. Midwest Operating Engineers Fringe Benefit Funds, 842 F. Supp. 1039, 1043 (N.D. Ill. 1993); Valluzzi v. United States Postal Service, 775 F. Supp. 1124, 1125 (N.D. Ill. 1991). By their concession, plaintiffs removed the breach theory incorporated in Count II from the issues to be contested at the trial upon liability.

### B. Plaintiffs Abandoned Count II In Their Post-Trial Briefing And Closing Argument Upon Liability

Despite having already conceded this issue, plaintiffs did attempt to resurrect this theory before the trial upon liability in their pre-trial contentions of law nos. 8-10, 13, and 26, which asserted that the FDIC had breached the 1991 WA. However, plaintiffs then clearly abandoned the theory underlying Count II in their post-trial briefing and closing argument after the trial upon liability.

In their post trial reply brief [on liability], May 24, 2000 at 44-45, plaintiffs described the breaches in their first amended complaint as relating only to the 1982 MOU:

> The government here had a continuing duty under the 1982 MOU to permit the institution to amortize supervisory goodwill for a specific period of time. . . Under the continuing claim doctrine, each breach of that duty by the government created a new cause of action. Plaintiffs allege three breaches in their amended complaint: (1) the decision to impose heightened capital requirements in the

> 1988 MOU; (2) the decision to impose heightened capital requirements in the 1991 Written Agreement; and (3) the decision to initiate insurance revocation proceedings against the Bank and cause the Pennsylvania Department of Banking ("PDB") to seize the Bank in December, 1992.

No mention was made of a breach theory based upon the 1991 Written Agreement. Id. In the same document at 73, plaintiffs made it clear that the theory expressed in Count II – that the 1991 Written Agreement was a valid contract breached by the Government – had been abandoned as inconsistent with their other theories:

> Second, because the 1991 Written Agreement was itself imposed on Meritor in breach of the 1982 goodwill agreement it is of no legal force or effect, and Meritor's alleged noncompliance with the illegal demands imposed in the 1991 Written Agreement can confer upon the government no rights or privileges of any kind. It would be a perverse world in which FDIC can justify its unlawful actions in 1992 by Meritor's noncompliance with unlawful demands made one year earlier.

In their closing argument, plaintiffs continued to demonstrate that they were not pursuing Count II, summarizing the essence of the complaint and first amended complaints as follows, at Tr. (L) 6142:

> First of all, it relates back to the occurrence that is the heart and soul of the complaint, that is the1982 MOU and the breach of that. That's what that original complaint is all about. We've merely alleged that there were two other breaches of that.

Plaintiffs also described what the Court had to resolve as to liability, at Tr. (L) 6035:14-18:

> Specifically, the Court has two issues before it.
> The first is what did the 1982 MOU provide in terms of the treatment of the goodwill on the books of Meritor that resulted from the merger between Western Savings & Loan and Meritor. Second, did the government breach that agreement.

Nowhere did the plaintiffs assert that the Court must resolve any issue as to whether the Government had breached the 1991 Written Agreement, which would have been inconsistent with their assertion that it was "of no legal force or effect." Plaintiffs clearly abandoned the allegations and the breach theory set forth in Count II.

### C. <u>This Court's Opinion Upon Liability Did Not Address Count II</u>

In keeping with this position of the plaintiffs with respect to Count II, this Court's opinion upon liability did not address the breach theory based upon the 1991 Written Agreement. Instead, the Court concluded only that the 1982 agreement was breached in 1988, 1991, and 1992:

> As detailed in the previous pages, the court finds that the FDIC is liable for violating the terms of its 1982 Memorandum of Understanding (MOU) with Meritor regarding how the Western goodwill would be treated for capital purposes. The FDIC violated the agreement when it forced Meritor to enter the 1988 Memorandum of Understanding . . . The FDIC also breached the 1982 MOU when it forced Meritor to enter a 1991 Written Agreement after satisfying the terms of the 1988 MOU. . . . Finally, the FDIC breached the 1982 MOU when it removed Meritor's FDIC insurance on December 11, 1992, which directly led the Secretary of the PDB to close the bank. Meritor and its shareholders were harmed by all of these actions. Thus, the FDIC is liable to Meritor for its breaches of the 1982 MOU.

<u>Slattery v. United States</u>, 53 Fed. Cl. 258, 290 (2002).

The Court also summarized its liability holdings in the opinion upon damages without any mention of the theory set forth in Count II:

> In its previous opinion, this Court found the Federal Deposit Insurance Corporation ("FDIC") liable for breaching its 1982 Memorandum of Understanding ("1982 MOU") with Meritor Savings Bank ("Meritor"). [FN1] Specifically, this Court held: (1) the FDIC liable for violating the terms of its 1982 MOU with

> Meritor regarding how the goodwill arising from Meritor's merger [FN2] of Western Savings Fund ("Western") would be treated for regulatory purposes; (2) that the FDIC violated the agreement when it forced Meritor to enter the 1988 Memorandum of Understanding ("1988 MOU") requiring Meritor to obtain higher capital levels than its peers, and when it failed to do so, to quickly raise $200 million in tangible capital that directly lead to the sale of 54 of Meritor's best branches and other assets; (3) that the FDIC breached the 1982 MOU when it forced Meritor to enter a 1991 Written Agreement after satisfying the terms of the 1988 MOU [FN3]; and (4) that the FDIC breached the 1982 MOU when it removed Meritor's FDIC insurance on December 11, 1992 which directly led the Secretary of the Pennsylvania Department of Banking to close the bank. Slattery v. United States, 53 Fed.Cl. 258 (2002) ("Slattery I").

Slattery v. United States, 69 Fed.Cl. 573, 575 (2006). Clearly, the Court has not previously decided the validity of Count II of plaintiffs' first amended complaint.

Moreover, we explained in post-liability trial briefing that "[a]ny 'breach' by the FDIC in 1992 was excused by the pre-existing material breach of Meritor with respect to the capital-related agreements of the parties, embodied in their final form of the 1991 WA." Govt. Post-Trial Br. at 35. As noted above, the plaintiffs asserted in response that the 1991 Written Agreement was "of no legal force or effect," thus that their apparent breach of that agreement could not excuse any breach by the Government in 1992. Should this Court, rather than correcting the apparent error in its final order and final judgment, decide to consider whether the 1991 Written Agreement was breached by the Government, it would likewise need to determine whether the prior material breach of that agreement by Meritor excused any apparent breach of the same agreement by the Government in 1992. The current form of the final judgment is manifestly in error and we request that the Court reconsider its final judgment and amend it to dismiss the allegations of Count II.

## III. The Final Judgment Needs To Be Clarified With Respect To The "Gross-Up" Issue

The final judgment states that the award is to be "grossed up to account for any corporate income taxes that the IRS [Internal Revenue Service] may claim against these damages." (Emphasis added). This language raises two problems. First, the language renders conditional this Court's judgment. There is simply no provision in the Court's rules that allows this Court to enter a conditional judgment, but this appears to be the result of the judgment, which provides for a tax "gross-up" only if the IRS asserts a claim against the Meritor receivership for Federal corporate income taxes at some indefinite point in the future. Indeed, as noted in 10 Federal Practice and Procedure § 2651:

> Finally, the difference between a conditional judgment and a judgment as defined in Rule 54(a) should be noted. Some courts have authorized judgments that do not become effective unless certain conditions are complied with, or that may be defeated or amended by the performance of a given act or the occurrence of a certain event. Judgments of this type are considered judgments under Rule 54(a) only when the contingency has been removed; FN26 prior to that time the court's decision is not appealable.

Thus, until the IRS acts or fails to act within the time required by statute, the Court's order of a "gross-up" is contingent, and will be nullified in part if the IRS does not claim any such taxes are due. The situation is as stated in Peters v. Welsh Dev. Agency, 920 F.2d 438, 440 (7th Cir. 1990):

> In [another case], this Court could tell from the face of the judgment and a review of the docket sheet that the case was over. In the present case, by contrast, the District Court's conditions are temporally open-ended, and this Court has no way to be sure whether those conditions have or have not been met. The judgment here simply does not tell this Court that the case in the District Court is over.

See also Zucker v. Ernst & Young, 14 F.3d 477, 481 (9th Cir. 1994) (unsatisfied requirement in judgment that parties notify the trial court of an event deprived the appellate court of jurisdiction). The Court's final judgment would not appear to produce a final appealable judgment, given the need for action by the IRS.

Additionally, the plain language of this judgment appears to require the FDIC's Deposit Insurance Fund ("DIF")[1], the presumed source of payment for any judgment for the FDIC's breach of contract, see 22 U.S. Op. Off. Legal Counsel 141, 1998 WL 1180050 (July 22, 1998) (concluding that the FSLIC Resolution Fund ("FRF") was the appropriate source to pay any judgments in cases where the FSLIC was a party to an assistance agreement with a thrift because the FRF had assumed the liabilities of FSLIC), to pay the full amount of any taxes "claimed" by the IRS, regardless of whether the receivership is ultimately found liable for any taxes. However, like any taxpayer, the FDIC receiver will presumably have the option to pay any taxes claimed due, then sue for a refund if it disputes the amount of taxes the IRS claims are owed, including taking an appeal of any adverse trial decision. Thus, the amount of such taxes actually paid by the receivership may not be known for years.

As explained in the opinion by the Office of Legal Counsel, the FRF, here by analogy the DIF, takes the place of the Judgment Fund as the source of payment for Winstar-related case damages, here by analogy any damages paid in Slattery. See 22 U.S. Op. Off. Legal Counsel 141, 1998 WL 1180050, at § II (page numbers unavailable). The Judgment Fund will not pay

---

1 The Permanent Insurance Fund ("PIF") funded the FDIC's assistance to Meritor in 1982. In accordance with 12 U.S.C. § 1821(a)(5)(B), the Bank Insurance Fund ("BIF") assumed all assets and liabilities of the PIF as of August 9, 1989. Under recent legislation, the BIF has been merged into the Deposit Insurance Fund.

appealable judgments. See Christian v. United States, 49 Fed. Cl. 720, 727-28 (2003), rev'd in part on other grounds, 337 F.3d 1338 (Fed. Cir. 2003) (explaining that "finality for Judgment Fund purposes requires the exhaustion of appeal rights so as to protect the Government from premature payment); see also GAO Office of Gen. Counsel, Principles of Fed. Appropriations Law, Vol. III, Ch. 14 at 58 (purpose of finality requirement to protect Government "against loss by premature payment of a judgment which might later through appeal be amended or reversed") (citation omitted). As a substitute for the Judgment Fund, the DIF also will not pay final judgments that remain appealable. Accordingly, we respectfully request that the Court clarify when it contemplates the DIF being required to make any payments for a tax "gross-up."

## IV. The Final Judgment Needs To Be Clarified With Respect To Receivership Claims

We respectfully request that the Court clarify what it intended to order with respect to its statement that the award "shall be paid net of any receivership claims." The FDIC as receiver is required by 12 U.S.C § 1821(d)(11), "Depositor preference," to pay claims in the following sequence:

> (A) In general. Subject to section 5(e)(2)(C) [12 U.S.C.S. § 1815(e)(2)(C)], amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
> (i) Administrative expenses of the receiver.
> (ii) Any deposit liability of the institution.
> (iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
> (iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
> (v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

Thus, payments to shareholders are made when all other claims have been satisfied. See id. According to the "Goodwill Financial Reporting Package – Meritor Savings Bank," dated March 31, 2006, the Meritor receivership owes unpaid interest of more than $2 million to other creditors, $29 million to the FDIC, and an estimated Federal income tax liability of $11.126 million owing to the IRS. See Report 3 of Goodwill Fin'l Reporting Package.

In accordance with 12 U.S.C § 1821(d)(11), the FDIC as receiver would be required to pay those claims out of any funds received by the receivership, in this case any judgment paid, before paying any surplus to the shareholders. The Court is respectfully requested to clarify what mechanism it intends to accomplish its expressed intent that the award shall be paid "net of any receivership claims." Specifically, to satisfy the Court's judgment, the Government needs to know whether the Court intends for the FDIC's DIF to pay the Meritor receivership such additional funds as would be required to satisfy all existing claims, including the estimated claim of the IRS, against Meritor, so that any judgment against the United States/FDIC would not be reduced before payment to shareholders. Alternatively, if the Court intends for the FDIC receiver to follow some distribution scheme other than the statutory one, we need to know what that intended distribution scheme is. These are two very different scenarios, and we need to know which the Court intended. Also, in the event that either party appeals the Court's judgment in this regard, clarification of this issue is necessary so that the appellate court may fully consider the issue without the need for remand.

## CONCLUSION

Based upon the arguments presented above, we respectfully urge the Court to reconsider and amend its final judgment to dismiss Count II of plaintiffs first amended complaint, and

further request the Court to clarify its final order and final judgment with respect to the directions to "gross-up" the judgment to account for any Federal corporate income taxes that the IRS "may claim against these damages," and to pay the damages "net of any receivership claims."

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

s/David M. Cohen by Jeanne E. Davidson
by Patricia M. McCarthy
DAVID M. COHEN
Director

s/F. Jefferson Hughes
F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 305-3067
Fax: (202) 514-8640

OF COUNSEL:

SCOTT D. AUSTIN
WILLIAM G. KANELLIS
Attorneys
Commercial Litigation
Branch
Civil Division
Department of Justice

October 25, 2006

Attorneys for Defendant

# APPENDIX TO DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK P. SLATTERY, JR., ON BEHALF OF HIMSELF AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED SHAREHOLDERS OF MERITOR SAVINGS BANK,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 93-280C<br><br>**FIRST AMENDED COMPLAINT** |

For its complaint against defendant United States of America ("United States"), plaintiff Frank P. Slattery ("Slattery") states as follows:

**NATURE OF THE CASE**

1. This is a suit to recover damages sustained by Meritor Savings Bank ("Meritor") of Philadelphia, Pennsylvania, and by Meritor's shareholders, resulting from the United States' abrogation and repudiation of its contractual obligations to Meritor, Meritor's predecessor-in-interest and its shareholders.

**JURISDICTION**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

**PARTIES**

3. On December 11, 1992, the Pennsylvania Secretary of Banking seized Meritor and appointed the Federal Deposit Insurance Corporation ("FDIC") receiver of the institution. At the time Meritor was seized, Plaintiff Slattery owned 190,400 shares of the institution's stock; Slattery

77. FDIC's breach of the parties' contract proximately caused the Pennsylvania Secretary of Banking to seize Meritor, and to appoint a receiver for the institution, thereby causing harm to the institution, to the plaintiff, and to every other shareholder of the institution.

**COUNT II: BREACH OF CONTRACT**

**(The 1991 Written Agreement)**

78. The allegations contained in paragraphs 1 through 77 are incorporated by reference.

79. The April 5, 1991 Written Agreement between Meritor, the FDIC and the Pennsylvania Department of Banking constitutes a binding contract.

80. The 1991 Written Agreement reaffirms Meritor's right to treat as a regulatory capital asset the goodwill created when its predecessor-in-interest acquired Western in 1982.

81. In addition, the 1991 Written Agreement requires the parties to renegotiate the contract should the Congress take away Meritor's contractual right to treat supervisory goodwill as a regulatory capital asset:

> The terms of this paragraph 1 shall be renegotiated if, by reason of any act of Congress, the Bank may no longer consider grandfathered goodwill as a capital component, or if other changes affecting the calculation of the Primary and/or Risk-Based Capital Ratios are made by reason of any act of Congress which, in the opinion of the FDIC, materially detract from the bank's ability to carry out the terms of this paragraph.

1991 Written Agreement at 3.

82. As of December 9, 1992, the day when the FDIC issued its Notification to Primary Regulator of Findings, and on December 11, 1992, the day the institution was seized, Meritor was in compliance with each of its obligations under the 1991 Written Agreement.

83. On December 11, 1992, the FDIC informed Meritor that it would no longer consider Meritor's $253 million in goodwill as a regulatory capital asset.

84. Further, in breach of the 1991 Written Agreement, the FDIC failed to renegotiate the 1991 Written Agreement, as that agreement expressly requires.

85. FDIC's breach of the parties' contract proximately caused the Pennsylvania Secretary of Banking to seize Meritor, and to appoint a receiver for the institution, thereby causing harm to the institution, to the plaintiff, and to every other shareholder of the institution.

**COUNT III: FIFTH AMENDMENT/UNCONSTITUTIONAL TAKING OF PROPERTY**

86. The allegations contained in paragraphs 1 through 85 are incorporated by reference.

87. The April 3, 1982 Assistance Agreement and Memorandum of Understanding between the FDIC and Meritor's predecessor-in-interest, PSFS, constitute a binding contract authorizing PSFS to use the purchase method of accounting in connection with the PSFS-Western merger, to treat the goodwill generated by the merger as an intangible asset for purposes of calculating its capital for all regulatory purposes, and to amortize the goodwill over 15 years using the straight-line method.

88. In consideration for this treatment of goodwill, PSFS assumed Western's substantial liabilities and agreed to operate and manage Western. PSFS's agreement to merge with Western saved the government, by its own estimates, in excess of $400 million.

89. Meritor's contractual right to treat goodwill as an intangible asset for regulatory capital purposes is a property right protected by the Fifth Amendment.

(i) That the Court grant such other relief as the law and evidence may justify, and that the Court may deem just and proper.

Respectfully submitted,

Thomas M. Buchanan
WINSTON & STRAWN
1400 L Street, NW
Washington, DC 20005
(202) 371-5700
Attorneys for Plaintiff

Eric W. Bloom
Robert A. Berger
Charles B. Klein
WINSTON & STRAWN
1400 L Street, NW
Washington, DC 20005

Of Counsel

DATE: October 1, 1996

PCDOC# 0021148.01B

(UNDER SEAL)

# UNITED STATES COURT OF FEDERAL CLAIMS

Civil Action No. 93-280 C
(Smith, C.J.)

**FRANK P. SLATTERY, JR., ET AL.,**
*Plaintiffs,*

v.

**UNITED STATES OF AMERICA,**
*Defendant.*

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Thomas M. Buchanan**
**WINSTON & STRAWN**
**1400 L Street, N.W.**
**Washington, D.C. 20005**
**(202) 371-5700**

**OF COUNSEL:**

**Eric W. Bloom**
**Peter K. Dykema**
**Vivek Chopra**
**WINSTON & STRAWN**
**1400 L Street, N.W.**
**Washington, D.C. 20005**

Ultimately the question before this Court is whether PSFS, at the time it contracted with FDIC, received what it bargained for. To ask the question is to answer it because no institution would have, or could have, agreed to assume the liabilities of a failing institution -- almost $800 million of liabilities in excess of the assumed assets (marked to market) -- if FDIC could take adverse regulatory action based on the inevitably lower tangible capital numbers caused by the merger. Indeed, to enter into an agreement that would have allowed FDIC instantly to take action based on the resulting institution's tangible capital position would have been, as the Supreme Court so aptly put it, "madness."

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiffs' Motion for Partial Summary Judgment and find that FDIC breached the parties' 1982 Agreement by failing to treat Meritor's supervisory goodwill as regulatory capital in deciding to: (1) impose the enhanced capital requirements in the 1988 MOU; (2) impose the even more-enhanced capital requirements in the 1991 W.A.; and (3) initiate insurance revocation proceedings and otherwise cause PDB to appoint FDIC as receiver for the institution in December 1992.

Respectfully submitted,

Thomas M. Buchanan/vc

Thomas M. Buchanan
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5787

CONFIDENTIAL: FILED UNDER SEAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK P. SLATTERY, JR., et al., Plaintiffs, | ) | |
| v. | ) | No. 93-280C (Chief Judge Smith) |
| THE UNITED STATES, Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

RODGER D. CITRON
KATHERINE KELLY
KENNETH R. NAGLE
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

January 19, 1999

E. The 1991 Written Agreement Is A Regulatory Agreement Not Subject To This Court's Jurisdiction And, In Any Case, Was Not Breached

Count II alleges that the 1991 Written Agreement was a binding contract that reaffirmed the 1982 MOU. Slattery further alleges that the 1991 WA was breached in 1992 when the FDIC announced it would not count the Western goodwill as tangible capital after December 18, 1992, and also when the FDIC failed to renegotiate the 1991 WA under its terms. Plaintiffs' claims fail as to the 1991 agreement because this Court lacks jurisdiction over the alleged breaches. Even if the Court has jurisdiction, judgment should be entered in favor of defendant because the agreement was not breached.

This Court lacks jurisdiction to entertain any claim for breach of the 1991 Written Agreement because that agreement is a regulatory agreement outside the Tucker Act. The 1991 WA required Meritor to maintain its capital ratios above the minimum levels set by regulation for institutions with no serious problems, restricted its payment of dividends and executive compensation levels, and required it to provide quarterly reports to regulators, and specified that it was a "written agreement" as that term is defined and referred to in FDIC regulations.

Thus the 1991 WA was intended merely to embody the regulation of Meritor by the Federal and Pennsylvania authorities, rather than being a business transaction in the marketplace involving the Government. "[C]ontract liability that is enforceable under the Tucker Act 'does not extend to every

agreement, understanding, or compact which can be semantically stated in terms of offer or acceptance or meeting of the minds.'" Commonwealth of Kentucky v. United States, 27 Fed. Cl. 173, 179 (1992), quoting Kania v. United States, 650 F.2d 264, 268 (Ct.Cl.), cert. denied, 454 U.S. 895 (1981). Generally, such Government liability involves contracts for the purchase or sale of lands, goods or services. See Kania, 650 F.2d at 268, 227 Ct. Cl. at 464. By contrast, where the Government enters into agreements in its sovereign capacity, for the benefit of the general public, no liability arises. E.g., Commonwealth of Kentucky, 27 Fed. Cl. at 179, citing Horowitz v. United States, 267 U.S. 458, 461 (1925).

The 1991 WA had no purpose other than the regulation of Meritor in accordance with the banking laws. It was clearly a regulatory agreement in which duties and obligations of a regulatory nature, as opposed to a contractual nature, were set forth. Indeed, Mr. McCarron, Meritor's General Counsel at the time the parties entered into the 1991 WA, did not recall that the document placed any duties upon the Government. PFOF 74. Mr. High, Meritor's Chief Financial Officer, raised a concern as to whether the 1991 WA bound the FDIC in any way before the agreement was entered into. Id. Finally, the FDIC and Pennsylvania reserved all of their powers to take such supervisory action as was appropriate under the circumstances. Id.

Further, the alleged breaches of this agreement go beyond

its terms. The 1991 Written Agreement only provided for the inclusion of goodwill in primary capital, not in tangible capital. PFOF 73. Moreover, as noted, it specifically stated that it did not provide for a limitation upon the FDIC's ability to initiate section 8(a) proceedings under appropriate circumstances. PFOF 74.

The "renegotiation" clause provided that the parties would renegotiate the required capital ratios if, by reason of any act of Congress, the Bank could no longer include grandfathered goodwill as a capital component, or if, in the opinion of the FDIC, changes in the calculation of the required capital ratios because of an act of Congress materially detracted from the Bank's ability to comply with the WA. All parties agree that no one from Meritor or the FDIC ever raised the need for revision of the capital ratios set forth in the WA. In fact, the new capital regulations promulgated in accordance with FDICIA did not take effect until after the institution was closed by the Commonwealth of Pennsylvania, so any potential renegotiation before the date the institution was closed would have been premature.

In any event, renegotiation would not have helped Meritor. Even if a renegotiation had resulted in a reduction of Meritor's capital ratios to a level taking account of any inability to count goodwill, this change would not have cured Meritor's massive underlying financial problems.

order rescission of such contracts.

Further, plaintiffs' assertions that potential stockholders invested on the basis of FDIC promises (1st Amen. Compl. at ¶¶ 112-16) to PSFS is negated by the bold-faced notice on the front of the 1983 stock offering circular to the effect that the FDIC had not rendered any judgment on the accuracy or adequacy of the circular and did not approve or disapprove the issuance of such stock. PFOF 21.

There is no basis for judgment against the Government under Count VII and summary judgment should be rendered in favor of the Government as to such.

VII. Third-Party Beneficiary Claim

This Court has already rendered summary judgment with respect to the third-party beneficiary claims brought by plaintiffs. Slattery v. United States, 35 Fed. Cl. 180, 185 (1996).

CONCLUSION

For the reasons set forth above, the Court should grant defendant's motion for summary judgment and enter judgment in favor of the United States.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

RODGER D. CITRON
KATHERINE KELLY
KENNETH R. NAGLE
Attorneys
Commercial Litigation
Branch
Civil Division
Department of Justice

F. Jefferson Hughes
F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288

Attorneys for Defendant

January 19, 1999

(Under Seal)

# UNITED STATES COURT OF FEDERAL CLAIMS

**Civil Action No. 93-280 C**
**(Smith, C.J.)**

**FRANK P. SLATTERY, JR., ET AL.,**
*Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**
*Defendant.*

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Thomas M. Buchanan
WINSTON & STRAWN
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5700

OF COUNSEL:

Eric W. Bloom
Peter K. Dykema
Charles B. Klein
Vivek Chopra
WINSTON & STRAWN
1400 L Street, N.W.
Washington, D.C. 20005

in one suit'").

This court acknowledged that courts apply the continuing claim doctrine in cases that involve "a series of distinct events, each causing harm to the plaintiff and each classifiable as a separate 'breach' of the defendant's 'continuing duty' to the plaintiff." Plaintiffs in Winstar-Related Cases, 37 Fed. Cl. at 189. This is the case here.[20]

## IV. The Government Is Not Entitled to Summary Judgment on Plaintiffs' Takings Claims

"A claimant under the Fifth Amendment must show that the United States, by some specific action took a private property interest for public use without just compensation." Short v. United States, 50 F.3d 994, 1000 (1995); U.S. Const. amend. V. Plaintiffs have alleged three takings claims. Count III alleges that the government "took" Meritor's contractual right to treat supervisory goodwill as an asset for purposes of calculating regulatory capital. Count IV alleges that the government "took" the $181.3 million received from Mellon Bank, N.A. from Meritor and its shareholders. Count V alleges that the government committed a regulatory taking by stripping Meritor's supervisory goodwill of all economic value by acting in anticipation of the proposed FDIC final rule (effective December 19, 1992) that prohibited institutions from treating supervisory

---

[20] This Court and the Federal Circuit declined to apply the continuing claim doctrine to the claims of two Winstar-related plaintiffs, Ariadne and Shane. 37 Fed. Cl. at 189; 1998 WL 1942 at *5. The two plaintiffs had argued that their causes of action actually constituted a series of distinct breaches, thus postponing accrual until the government's final breach -- when the OTS acted directly against the individual thrifts. 37 Fed. Cl. at 189. Both courts rejected this assertion and held that the thrifts had not faced a series of breaches. Instead, the thrifts suffered one breach when their goodwill contracts were abrogated by the final promulgation of OTS regulations implementing FIRREA's charge-off of supervisory goodwill. All subsequent denials of the use of supervisory goodwill "flow[ed]" from this original repudiation. Id. at 190; 1998 WL 1942 at *5. In contrast, in the present action there was no "single event" -- like FIRREA -- which "made clear" the government's intent to breach the 1982 MOU, see id.; rather, there was a series of breaches of the 1982 MOU.

goodwill as a regulatory capital asset.

The government raises three arguments against Plaintiffs' takings claims. First, the government asserts that these claims are invalid because they allege unlawful, or unauthorized, Government acts. Second, the government contends that the Plaintiffs allegedly possessed nothing that could be taken because Pennsylvania law permitted the appointment of a receiver for Meritor. Finally, the government alleges that Plaintiffs' regulatory taking claim (Count V) must fail because: (1) the alleged taking took place before the pertinent regulations became effective; (2) Meritor, like all banks, was subject to pervasive government regulation; and (3) the Court cannot address the reasonable investment expectations of thousands of Meritor investors.

Before addressing these arguments, it is important to recognize that Plaintiffs assert their breach of contract and takings claims in the alternative. See RCFC 8(a). This Court appropriately stayed the takings claims pending a decision of liability on Plaintiffs' breach of contract counts because the takings claims involve a constitutional question.[21] The government's attempt to strike Plaintiffs' takings claim is thus premature.

In any event, the government's arguments are unpersuasive. Despite the government's argument to the contrary, all of the alleged takings rest upon conduct authorized "by some valid enactment of Congress." Short, 50 F.3d at 1000. FDIC clearly has the authority to initiate insurance revocation proceedings and further is permitted by law to discuss Meritor's regulatory status with

---

[21] See also Janowsky v. United States, 31 Fed. Cl. 520, 522 (1994) (holding that it was premature to address defendant's motion to dismiss takings claim before determining "whether plaintiffs are entitled to recover on their contract theory"); Winstar Corp. v. United States, 21 Ct. Cl. 112, 117 (1990) (takings claim stayed pending outcome of breach of contract claim based upon same operative facts under principle that constitutional issues should be avoided when possible).

the state regulator. While FDIC's actions are thus authorized by Congress, FDIC's decision to breach the 1982 contract is at the same time an unlawful taking in that it effectively "takes" from Meritor a valuable property right, *i.e.*, certain contract rights, without compensation. See Lynch v. United States, 292 U.S. 571, 580 (1934) ("to abrogate contracts . . . would be not the practice of economy, but an act of repudiation" by the government in violation of the Fifth Amendment). The Constitution requires the government to reimburse Meritor for the "taking" of its contract rights. And the government cannot circumvent its constitutional obligations merely by attempting to transform Plaintiffs' takings claims into some undefined, and unalleged, tort.[22]

The purported fact that Pennsylvania law permitted PDB "to place the institution into receivership if certain events occurred" is inapposite. Govt. Mot. at 45-46. Meritor does not challenge PDB's actions. All that matters is that *FDIC* did not act under Pennsylvania law when the agency initiated section 8(a) proceedings; it instead acted pursuant to powers accorded to it by Congress. The real issue is thus whether PDB would have seized Meritor but for the FDIC's conduct. If FDIC proximately caused Meritor's seizure, then PDB acted as a mere instrumentality for the taking. In other words, PDB's actions, even if pursuant to Pennsylvania law, are legally irrelevant here if they were directly caused by the FDIC's discretionary conduct. It erodes the spirit of the Takings Clause to permit the government to avoid paying citizens "just compensation" for property rights taken when, instead of doing the "dirty work" itself, the government forces a state government

---

[22] Indeed, the government fails to explain how the takings allegations "sound in tort." Govt. Mot. at 44; see also id. at 45. The government "wrongfully retained" funds belonging to Meritor because the institution did not receive just compensation for this taking. An "unlawful taking" thus occurs when the government takes property without just compensation; it is not some kind of tort.

to do the actual "taking."

Nor does the fact that Meritor was "subject to the full regulatory powers of the FDIC" defeat Plaintiff's regulatory takings claims. See, e.g., Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 900 (1986) ("it is no longer asserted that a regulation, by its very nature as a regulation, cannot be an exercise of eminent domain"); Skaw v. United States, 740 F.2d 932, 939 (Fed. Cir. 1984) (holding that a taking can occur by a valid regulation with no physical invasion). The Supreme Court articulated the standards underlying a regulatory taking in Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211 (1986):

> [W]e have eschewed the development of any set formula for identifying a "taking" . . . and have relied instead on ad hoc, factual inquiries into the circumstances of each particular case. . . . To aid in this determination, however, we have identified three factors which have "particular significance:" (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the government action."

Id. at 224. Application of these factors to the underlying facts, at a minimum, raises a triable issue of fact as to whether the economic impact of FDICIA interfered with Meritor's investment-backed expectations.

Finally, Plaintiffs allege that the government committed a regulatory taking because it acted "in anticipation of the effective date of the new regulations." First Amended Compl. at ¶ 100. Plaintiffs also submit that the undisputed facts prove that this allegation is in fact true. See Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment at 10-22. At worst, however, this allegation raises a triable issue of fact. The agreements themselves establish beyond dispute that Meritor had a contractual, property right to treat goodwill as a regulatory capital asset.

If the FDIC acted in anticipation of FDICIA's not-yet-implemented regulations when refusing to consider supervisory goodwill as a regulatory capital asset, then the government committed a regulatory taking.[23] See Florida Rock Indus., 791 F.2d at 900 ("the question has got to be faced whether the impact of the regulation here involved was sufficiently severe under the facts, as undisputed or as found").

## V. Plaintiffs May Recover Restitution Damages Under a Rescission Theory

Plaintiffs' rescission count (Count VI) rests upon a determination that the government breached Plaintiffs' goodwill contracts. Accordingly, a ruling on whether rescission is appropriate - and thus whether Plaintiffs may recover restitution damages - is really a damages, and not a liability, issue. As this Court is aware, damages issues are stayed pending a decision on liability. Therefore, the government's argument to dismiss Plaintiffs' restitution count is not ripe.

Regardless, the government's arguments on the merits must fail. First, the government confuses two uses of the term "rescission." Rescission as it is used in Count VI refers to an alternative remedy for breach of contract expectancy damages. In other words, a non-breaching party may elect between enforcement and avoidance of the contract as a breach of contract remedy.[24] But rescission and restitution as a breach of contract remedy should not be confused with an "agreement of rescission," where each party agrees to discharge the other party's performance duties under

---

[23] The government's argument that "it would be virtually impossible for this Court to address the reasonable investment expectations of at least thousands of investors who bought shares at various times over a ten year period" ignores that fact that, for the most part, the property "taken" — *i.e.*, the contractual rights regarding goodwill — belonged to Meritor. The damages for this taking is "just compensation," which would then be disbursed among the Meritor shareholders.

[24] See, e.g., Andrew Kull, Restitution As a Remedy for Breach of Contract, 67 S. Cal. L. Rev. 1465, 1466 (1994).

certain circumstances. See, e.g., Nebco & Assoc. v. United States, 23 Cl. Ct. 635, 642 (1991). The parties' agreement concerning rescission referred to on pages 49-50 of the government's brief is simply irrelevant to whether Plaintiffs may recover restitution damages under a rescission theory resulting from the government's breach of contract. In short, the government does not allege, nor can it show, that the parties somehow agreed to limit damages (or damage theories) in cases arising out of their agreements.

The government also misstates applicable law when asserting that rescission and restitution are available only in cases of a rescission agreement, fraud and mutual mistake. As indicated above, a plaintiff may choose rescission and restitution to make it "whole" as an alternative to expectancy damages for a breach of contract by the government. Arizona v. United States, 575 F.2d 855, 864 (Ct. Cl. 1978); see also FilmTec Corp. v. Hydranautics, 67 F.3d 931, 940 (Fed. Cir. 1995) (Newman, J., concurring) ("Restitution is a standard remedy for breach of contract and for the return of specific property and monies paid."); Acme Process Equip. Co. v. United States, 347 F.2d 509, 528 (Ct. Cl. 1965), rev'd on other grounds, 385 U.S. 138 (1966). In fact, the Court of Federal Claims and other courts have confirmed this analysis in Winstar-related cases.[25] And the government has even "conceded that private plaintiffs are entitled to restitution damages" for their alleged breach of contract in Statesman, 41 Fed. Cl. at 15.

Restitution damages can be measured in one of two ways:

(a) a reasonable value to the other party of what he received in

[25] See Far West Fed. Bank v. Office of Thrift Supervision, 787 F. Supp. 952, 960 (D. Or. 1992), aff'd, 119 F.3d 1358, 1366 (9th Cir. 1994); Statesman Savings Holdings Corp. v. United States, 41 Fed. Cl. 1, 15 (Fed. Cl. 1998); Resolution Trust Corp. v. Federal Sav. & Loan Ins. Corp., 25 F.3d 1493, 1504-05 (10th Cir. 1994).

terms of what it would have cost him to obtain it from a person in the claimant's position, or

(b) the extent to which the other party's [the breaching party's] property has been increased in value or his other interests advanced.

See Restatement (Second) of Contracts §§ 370, 371 (1981 & Supp. 1984). The Court of Claims has explained restitutionary relief as "the reasonable value of the injured party's performance, measured as of the time it was rendered, less the amount of benefits conferred upon plaintiff by the part performance of the breaching party." Arizona, 575 F.2d at 865; see also Texas Am. Oil Corp. v. United States Dep't of Energy, 44 F.3d 1557, 1569 (Fed. Cir. 1995) ("we agree that 'restitution' and the disgorgement of 'unjust enrichment' are related concepts").

Therefore, if the Court finds that the government breached Plaintiffs' goodwill contracts, Plaintiffs may then choose one of several damages theories including, *inter alia*: (1) expectancy damages; (2) restitution damages equaling the purchase price for Western; or (3) restitution damages equaling the government's unjust enrichment. See Far West Fed. Bank v. United States, 787 F. Supp. 952, 961 (D. Or. 1992), aff'd sub nom, Far West Fed. Bank v. Office of Thrift Supervision, 119 F.3d 1358, 1366 (9th Cir. 1994). The particular measure of restitution depends upon the circumstances of the case and is within a trial court's discretion. See Restatement (Second) of Contracts §§ 371 com. a (1981 & Supp. 1984); see also Far West, 119 F.3d at 1366.

Finally, the government's argument that, in essence, the Court cannot "unscramble the eggs" fails because several Winstar-related cases in various forms have explicitly held to the contrary.[26]

---

[26] Plaintiffs further deny the government's assertion that the Income Maintenance Agreement was associated with over half of the original goodwill.

As discussed above, a restitution theory may in fact *simplify* damages calculations when expectancy damages may be difficult to compute. In any event, if Plaintiffs pursue rescission as a remedy for breach of contract, it will provide the government at the appropriate time an expert report setting forth how rescission can be effected. Because the parties are currently litigating only the liability issues, the issue as to what form of rescission, if any, Plaintiffs may seek is not now before this Court.

It is sufficient to observe at this time, however, that rescission has been accepted by this Court, and others, as an appropriate remedy in goodwill cases. The Court of Federal Claims, just a few weeks ago Castle v. United States, ___ Fed. Cl. ___, No. 90-1291C, 1999 WL 50176 (Fed. Cl. Feb. 2, 1999), relied upon the Ninth Circuit's decision in Far West on an issue concerning privity of contract. The Far West decision, in turn, is highly instructive on the issue of rescission/restitution. In Far West, the court awarded private investors restitution for the government's breach of a forbearance agreement in circumstances somewhat similar to this action. See 119 F.3d at 1361. In 1987, the Federal Home Loan Bank of Seattle ("FHLB") secured the recapitalization of a failing thrift from a group of investors, in part, by entering into an agreement with the thrift under which the thrift could count a $1.5 billion FHLB line of credit, an intangible asset, as a component of the thrift's regulatory capital to be amortized on a twenty-five year, straight-line basis. Id. at 1362. But in 1989, FIRREA abrogated this agreement. The investors, as third-party beneficiaries of the forbearance agreement, sued the government for breach of contract, and the trial court granted restitution damages totaling the plaintiffs' initial investment in the bank. Id. at 1364; see also Far West, 787 F. Supp. at 961.

The court also rejected the government's argument that the plaintiffs must show that Far

West was harmed to recover restitution damages:

> I reject defendant's arguments. Plaintiffs need not prove that Far West failed, nor that FIRREA's passage adversely affected Far West's "bottom line" in specific areas of business. Instead, they need only establish that FIRREA's enactment made impossible or impracticable the performance of the promises that formed the basis of their bargain. Defendant cannot reasonably contend that the government was in a position to honor its obligations under the Conversion Agreement after FIRREA's passage. Therefore, plaintiffs have established frustration of the contract's purpose.

Id. at 787 F. Supp. at 960; see also Far West, 119 F.3d at 1365 (holding that there is no basis in contract law to argue that the investors would have to prove they suffered consequential damages to obtain restitution).

Far West does not stand alone. In Statesman Savings Holdings Corp. v. United States, 41 Fed. Cl. 1, 15 (Fed. Cl. 1998), this Court relied, in part, upon Far West to hold that private plaintiff-shareholders are entitled to restitution damages for the government's breach of a regulatory forbearance agreement abrogated by FIRREA. In Resolution Trust Corp. v. Federal Sav. & Loan Ins. Corp., 25 F.3d 1493 (10th Cir. 1994), another Winstar-related case, the Tenth Circuit held that "[i]n a contract action seeking restitution, recovery may be measured as the reasonable value of what defendant received 'in terms of what it would have cost him to obtain it from a person in the claimant's position,' as justice requires." Id. at 1504-05. These Winstar-related cases belie the government's assertion that rescission and restitution is not available in the goodwill contract context.

## VI. Rescission of the 1983 Shareholder's Investment.

Plaintiffs concede that, in light of the Court's holding dismissing Plaintiffs' third-party beneficiary count, Plaintiffs cannot recover restitution damages under a theory of rescission of the

1983 shareholder's investment. Plaintiffs nonetheless respectfully disagree with that holding and preserve this question of rescission for any appeal.

## CONCLUSION

WHEREFORE, for these and such other reasons as may appear just to the Court, Plaintiffs respectfully request that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

Thomas M. Buchanan /v.c.

Thomas M. Buchanan
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, DC 20005
(202) 371-5787

**Of Counsel**
Peter Kryn Dykema
Eric W. Bloom
Charles B. Klein
Vivek Chopra
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5700

March 3, 1999

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK P. SLATTERY, JR., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 93-280C |
| | ) | (Chief Judge Smith) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

RECEIVED 1999 MAY -7 A 11: 04 CLERK

## PLAINTIFFS' APPENDIX G FILING[1]

### I. Plaintiffs' Theory of the Case

In 1982 Meritor Savings Bank's ("Meritor") predecessor, Philadelphia Saving Fund Society ("PSFS"), agreed with federal banking authorities -- in this case, the Federal Deposit Insurance Corporation ("FDIC") -- to acquire a failing bank, Western Savings Fund Society ("Western"). Concurrent with the merger, PSFS and FDIC entered into a Merger Assistance Agreement ("MAA"). At the heart of the MAA was a promise included in a memorandum of understanding ("1982 MOU") -- expressly incorporated into the MAA -- that PSFS could book the failing bank's deficit net worth as goodwill to be amortized over a fifteen-year period. As the Supreme Court affirmed in Winstar Corp. v. United States, this promise can only be rationally understood as a commitment by the government to treat this "supervisory goodwill" as capital for all regulatory purposes. On any other reading, PSFS could have been seized the moment the transaction was consummated.

FDIC breached the agreement. First, the evidence is overwhelming, and plaintiffs submit,

---

1/ As per an agreement between the parties, neither side is designating any deposition testimony, the parties instead are preparing a stipulation to govern when deposition testimony may be introduced in lieu of live testimony and the procedures relating therewith. In addition, because Defendant will file its Appendix G filing on May 18, 1999, Plaintiffs reserve the right to amend this filing in light of Defendant's filing.

Meritor. A closing date for Meritor was set for December 11, despite the fact that prior to FDIC's December 8 request, PDB had made no plans to seize Meritor on that date or on any other date.

70. At the time it issued its Notification to Primary Regulator, and began proceedings to revoke Meritor's deposit insurance, FDIC knew PDB would respond by revoking Meritor's charter and taking possession of the bank.

71. On December 11, 1992, PDB filed a Certificate of Possession in the Court of Common Pleas of Philadelphia County and took possession of Meritor. In the same pleading, PDB appointed FDIC as the receiver of Meritor.

72. On December 11, 1992, Mellon assumed substantially all of the assets and liabilities of Meritor from FDIC.

## IV. Plaintiffs' Contentions of Law

1. The MAA is a binding contract enforceable against FDIC. The 1982 MOU is a part of the MAA and its terms are enforceable against FDIC.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999); Merger Assistance Agreement at § 4.2-4.4; Response to Second Request for Admissions (Pl. Exh. 4)[2] at 11, 12; Letter to PSFS from Thomas A. Brooks, General Counsel of FDIC (April 3, 1982) (Pl. Exh. 15).

2. FDIC had the authority necessary to enter into the MAA and be bound by its terms.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999); Merger

---

[2] Exhibit numbers refer to exhibits to the Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment filed with the Court on January 19, 1999.

States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992).

7. The Court can consider subjective contract performance.

Latecoere International, Inc. v. United States, 19 F.3d 1342 (11th cir. 1994); Keco Industries, Inc. v. United States, 203 Ct. Cl. 566 (1974); Dynalectron Corp. v. United States, 659 F. Supp. 64 (D.D.C. 1987); White Stone Partners v. Piper Jaffray Companies, 978 F. Supp. 878 (D. Minn. 1997); Restatement (Second) Contracts § 205 note (a).

8. FDIC's decision to calculate routinely the bank's capital ratios without the inclusion of Meritor's supervisory goodwill when analyzing the capital adequacy of the bank constitutes a breach of the 1982 MOU and the 1991 WA.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

9. FDIC' decision to analyze routinely Meritor's tangible capital or tangible equity capital position when analyzing the capital adequacy of the bank constitutes a breach of the 1982 MOU and the 1991 WA.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

10. FDIC's decision to regulate Meritor, generally, based on Meritor's tangible capital constitutes a breach of the 1982 MOU and the 1991 WA.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

11. FDIC's failure to treat Meritor's supervisory goodwill as regulatory capital in its

decision to impose heightened capital requirements in the 1988 MOU is a breach of the 1982 MOU.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

12. FDIC's failure to treat Meritor's supervisory goodwill as regulatory capital in its decision to impose heightened capital requirements in the 1991 WA is a breach of the 1982 MOU.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

13. FDIC's failure to treat Meritor's supervisory goodwill as regulatory capital in its decision to initiate 8(a) proceedings against the bank and request PDB to seize the bank is a breach of the 1982 MOU and the 1991 WA.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

14. Plaintiffs' 1988 breach claim in their Amended Complaint "relate back" to the original complaint.

Stephenson v. United States, 37 Fed. Cl. 396, 405 (Fed. Cl. 1997) (citations omitted); Woods v. Indiana University, 996 F.2d 880, 888 (7th Cir. 1993); Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n.29 (9th Cir. 1980).

15. The government received adequate notice about Plaintiffs' 1988 breach claim from the original complaint, all of the FDIC and bank documents which FDIC had in its possession since the seizure of the bank in 1992, and the discovery filed by Plaintiffs in June 1993.

White Mountain Apache Tribe v. United States, 8 Cl. Ct. 677, 682 (Ct. Cl. 1985);

California Fed. Bank v. United States, No. 92-138 C, * 11 (Fed. Cl. April 16, 1999); Chain Belt Co. v. United States, 115 F.Supp. 701, 714 (Ct.Cl.1953); CCM Corp. v. United States, 15 Cl.Ct. 670, 671 (1988).

26. Application of capital ratio requirements that excluded supervisory goodwill constitutes a breach of the 1982 MOU and 1991 WA.

Winstar Corp. v. United States, 21 Cl. Ct. 112 (Cl. Ct. 1990); Winstar Corp. v. United States; 25 Cl. Ct. 541 (Cl. Ct. 1992); Winstar Corp. v. United States, 64 F.3d 1531 (Fed. Cir. 1995); United States v. Winstar Corp., 116 S. Ct. 2432 (1996); Statesman Savings Holding Corp. v. United States, 26 Cl. Ct. 904 (Cl. Ct. 1992); California Fed. Bank v. United States, 39 Fed. Cl. 753 (Fed. Cl. 1997); Bank United of Texas FSB v. United States, No. 95-473 C (Fed. Cl. March 19, 1999).

27. FDIC's analysis of Meritor's capital on a tangible basis legally caused the inclusion of the heightened capital provisions of the 1988 MOU and 1991 WA, and the initiation of 8(a) proceedings against bank, if it was a substantial factor in FDIC's decision to take these actions.

California Fed. Bank v. United States, No. 92-138 C, * 11 (Fed. Cl. April 16, 1999); Mainline Tractor & Equipment Co., Inc. v. Nutrite Corp., 937 F. Supp. 1095, 1109 (D. Vt. 1996); Centex-Rooney Constr. Co., Inc. v. Martin County, 706 So.2d 20, 24 (Fla. Dist. Ct. App. 1997); 5 Corbin § 999 (Supp. 1999).

28. At no time did Meritor waive or surrender its rights under the 1982 MOU.

Universal Sportswear, Inc. v. United States, 145 Ct.Cl. 209, 180 F.Supp. 391 (1959); Miller Elevator Co., Inc. v. United States, 30 Fed. Cl. 662, 686 (Fed. Cl. 1994); Hannon Elec. Co. v. United States, 31 Fed. Cl. 135 (Fed. Cl. 1994).

29. All constitutional claims and damages issues in this case should be deferred for later trial, if needed.

## V. Plaintiffs' Witness List

### A. Edward Albertson (2 hours)

Mr. Albertson is an FDIC bank examiner. He will testify regarding a number of bank examinations of PSFS/Meritor that he either participated in or was in charge of. He will provide testimony regarding the drafting, negotiation and execution of the 1988 MOU, its meaning, and

Respectfully submitted,

Thomas M. Buchanan
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5787

**Of Counsel:**

Eric W. Bloom
Peter Kryn Dykema
Vivek Chopra
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5700

Date: May 4, 1999

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FRANK P. SLATTERY, JR., *et al.*,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | Civil Action No. 93-280 C<br>(Chief Judge Smith) |

# PLAINTIFFS' POST-TRIAL REPLY MEMORANDUM

Thomas M. Buchanan
Winston & Strawn
1400 L Street, N.W.
Washington, DC 20005
(202) 371-5787

Attorneys for Plaintiffs

Of Counsel:
Eric W. Bloom
Peter Kryn Dykema
Charles B. Klein
Winston & Strawn
1400 L Street, N.W.
Washington, DC 20005
(202) 371-5700

May 24, 2000

*Cherokee Nation of Okla. v. United States*, 26 Cl. Ct. 798, 803 (1992); *Plaintiffs in Winstar-Related Cases v. United States*, 37 Fed. Cl. 174, 189 (1997), *aff'd. sub nom. Ariadne Fin. Serv. v. United States*, 133 F.3d 874 (Fed. Cl.), *cert. denied*, 525 U.S. 823 (1998). The continuing claims doctrine permits a plaintiff to defer litigation until the termination of a continuous wrong, thus "spar[ing] plaintiff from having to pursue multiple actions." *Winstar-Related*, 37 Fed. Cl. at 189. The Claims Court explained the policy underlying the continuing claim doctrine:

> The continuing claim doctrine permits a plaintiff to defer litigious action until the termination of a continuing wrong, and thus spares plaintiff from having to pursue multiple actions. In this way *the continuing claim doctrine prevents the statute of limitations from protecting an offender in an ongoing wrong, and thereby avoids [sic] claims that would be unactionable simply because they commenced prior to the statutory period.*

*Cherokee Nation*, 26 Cl. Ct. at 803 (emphasis added) (citation *omitted*); *see also Miami Nation of Indians of Indiana, Inc. v. Lujan*, 832 F. Supp. 253, 256 (N.D. Ind. 1993).

In *Cherokee Nation*, the plaintiff asserted causes of action for multiple claims of trespass, only some of which occurred within the applicable six-year limitations period. The Claims Court, applying the continuing claim doctrine, held that the plaintiff could sustain its claims for *all* of the trespass allegations, even including claims that occurred at least seventy-nine years beyond the limitations period. *Cherokee Nation*, 26 Cl. Ct. at 804. The Court so held because it found that the government owed the plaintiff a continuing duty to recognize the tribe's sovereignty, and each of the government's repeated trespasses upon the tribe's land constituted breaches of that same duty.

The government here had a continuing duty under the 1982 MOU to permit the institution to amortize supervisory goodwill for a specific period of time. *See Ariadne Fin. Serv. v. United States*, 133 F.3d 874, 879 (Fed. Cir.), *cert. denied*, 525 U.S. 823 (1998) (The goodwill contract at issue in the case was a "contract that promised continuing performance into the future."). Under

the continuing claim doctrine, each breach of that duty by the government created a new cause of action. Plaintiffs allege three breaches in their amended complaint: (1) the decision to impose heightened capital requirements in the 1988 MOU; (2) the decision to impose heightened capital requirements in the 1991 Written Agreement; and (3) the decision to initiate insurance revocation proceedings against the Bank and cause the Pennsylvania Department of Banking ("PDB") to seize the Bank in December, 1992.

Plaintiffs filed this action well within six years from the date of this final (and most destructive) breach, and also within six years of the 1991 breach, thus avoiding both the risk of having to file successive actions concerning continuing breaches as well as the risk of facing potential *res judicata* hurdles. Therefore, in accordance with *Cherokee Nation* and the continuing claim doctrine, none of plaintiffs' causes of action for breach of contract is time-barred. *See Massachusetts Bay Transp. Auth. v. United States*, 21 Cl. Ct. 252, 265 (1990) (acknowledging the potential "piecemeal nature of the litigation" and expressing its desire "to keep this entire 'circus' under one tent"); *Nager Elec. Co. v. United States*, 177 Ct. Cl. 234, 245 (1966) (citation omitted) ("'it was not intended by Congress that . . . [the statute of limitations] should be interpreted to require a multiplicity of suits on various items of a claim arising under an entire contract,' but rather that 'all rights of the parties under the contract' are to 'be heard and determined at the same time and in one suit'").

separate contract between them." 13 WILLISTON ON CONTRACTS § 39:2, at 512 (4th ed. 2000).[27]

Second, because the 1991 Written Agreement was itself imposed on Meritor in breach of the 1982 goodwill agreement it is of no legal force or effect, and Meritor's alleged noncompliance with the illegal demands imposed in the 1991 Written Agreement can confer upon the government no rights or privileges of any kind. It would be a perverse world in which FDIC can justify its unlawful actions in 1992 by Meritor's noncompliance with unlawful demands made one year earlier.

Third, any suggestion that the actions taken by FDIC in December 1992 were in fact motivated by Meritor's alleged noncompliance with the ratio requirements-in the 1991 Written

[27] *See also Williams v. Agribank*, 972 F.2d 962, 966 n.5 (8th Cir. 1992) (bank's breach of a memorandum of understanding did not excuse the borrower's failure to perform under a prior note between the parties because "[t]he breach of one contract does not excuse a party's performance on a completely different contract"); *Smith v. O'Mara Enters., Inc.*, 100 B.R. 330, 336 (S.D. Ohio 1989) (corporate officer's breach of fiduciary duty did not excuse the corporation's obligation under a royalty agreement with the officer because "[w]here there exists two sets of obligations or contracts, the breach or non-performance of one contract does not justify the aggrieved party in refusing to perform another separate and distinct contract") (citations omitted); *Menzel v. Metrolina Anesthesia Assocs., P.A.*, 310 S.E.2d 400, 403 (N.C. Ct. App. 1984) (termination of a contract between an association and a hospital did not justify a doctor's breach of an employment contract with the association because "[t]he general rule is that the breach of one contract does not justify an aggrieved party in not performing another separate and distinct contract") (citations omitted); *Northwest Lumber Sales, Inc. v. Continental Forest Prods., Inc.*, 495 P.2d 744, 749 (Or. 1972) (defendant's failure to perform under a pine lumber order did not justify the plaintiff's cancellation of a stud order because "general contract law" does not "give either party to a contract the right to refuse performance because the other has breached a separate contract between them") (citations omitted); *Swaner v. Union Mortgage Co.*, 105 P.2d 342, 345 (Utah 1940) (mortgage company breached its contract with a builder even though the builder breached a separate contract between the parties because "[w]here two separate and independent contracts exist between A and B, and A breaches one contract, B is not thereby justified in breaching the other contract and may be held for resulting damages if he so breaches") (citations omitted). *See, generally*, Annotation, *Breach Of One Contract As Ground For Recission Of Another*, 27 A.L.R. 1157, 1157 (1923) (noting that "[t]he doctrine is well

(continued)

substance. They all described FDIC's dogged refusal to credit the goodwill, and the Hell it created. They waited seven years to tell their story.

On their behalf, and on behalf of all Meritor shareholders, we respectfully request that the Court enter Judgment for Plaintiffs and set a trial on damages with all possible speed.

Thomas M. Buchanan
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5787

Attorneys for Plaintiffs

**Of Counsel:**

Eric W. Bloom
Peter Kryn Dykema
Charles B. Klein
**WINSTON & STRAWN**
1400 L Street, N.W.
Washington, D.C. 20005
(202) 371-5700

Date: May 24, 2000

175110.7

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK P. SLATTERY, JR., et al., | ) | |
| Plaintiffs, | ) | Case Number |
| v. | ) | 93-280C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 6032 through 6170

Place: Washington, DC

Date: June 14, 2000

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

stated this is the closing argument in the Slattery versus the United States matter. With me at counsel table is Eric Bloom and Peter Dykema with the firm of Winston & Strawn, as well as Lynn Splandenburg, who all served on the trial team in this case.

THE COURT: Good to see you. Everyone on this case, I think I know almost as well as my family. I think we did eight or 10 weeks.

MR. BUCHANAN: That's about it, your Honor.

The issues before this Court is the liability or lack thereof of the government with regard to the 1982 MOU between then-Philadelphia Savings Fund Society, later Meritor and the United States.

Specifically, the Court has two issues before it. The first is what did the 1982 MOU provide in terms of the treatment of the goodwill on the books of Meritor that resulted from the merger between Western Savings & Loan and Meritor. Second, did the government breach that agreement.

We submit that any common sense analysis of the issue and the application of logic and any reference to the record supports the Plaintiff's view that a goodwill agreement in the 1982 MOU required the government to treat the goodwill as regulatory capital for all regulatory capital purposes, and unlike the government's view, that they only had to treat it toward the minimal capital ratios,

years you would increase that.

He also proposed a modest mortgage rate in his model. Together he said basically his growth could have been accomplished by merely the return and the interest of the deposits. It was a very simple, but very supported model, and it was a very simple plan. And of course, things can be adjusted, and they had very competent management. The government offered no expert in this area to rebut Dr. Goldstein.

On the statute of limitations, yes, we amended -- moved to amend the complaint more than six years after the statute -- more than six years after the initial complaint. Why we did that? Because the case had been stayed. Discovery had been stayed, and the entire case had been stayed fore most of that period. We did not have access to discovery. But the standard is, was the amended complaint, was the amended claim in the amended complaint, does it relate back, was the government put on notice, were they prejudiced. All those elements need to be established and the government hasn't established them.

First of all, it relates back to the occurrence that is the heart and soul of the complaint, that is the 1982 MOU and the breach of that. That's what that original complaint is all about. We've merely alleged that there were two other breaches of that. The government says in the

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK P. SLATTERY, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 93-280C |
| | ) | (Chief Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S POST-TRIAL BRIEF

DAVID W. OGDEN
Acting Assistant Attorney General

DAVID M. COHEN
Director

F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

HENRY R. FELIX
JOHN N. KANE, JR.
KATHERINE KELLY
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

May 3, 2000

> follows that substantial performance has <u>not</u> been rendered.

Calamari & Perillo, <u>Contracts</u> §§ 11-18 at 461-62 (3d ed. 1987) (emphasis added).

To determine whether a prior breach is "material," the United States Court of Appeals for the Federal Circuit has stated that the court must consider "the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties." <u>Stone Forest Indus., Inc. v. United States</u>, 973 F.2d 1548, 1550 (Fed. Cir. 1992); <u>see also</u> <u>Farmers Grain Co. of Esmond v. United States</u>, 33 Fed. Cl. 298, 300 (1995); <u>Acme Inv., Inc. v. Southwest Tractor, Inc</u>., 911 F. Supp. 1261, 1273 n.9 (D. Neb. 1995) (citing Restatement (Second) of Contracts §§ 237, 241 for proposition that "material" provision is "central to the deal"), <u>aff'd</u>, 105 F.3d 412 (8th Cir. 1997).

Any "breach" by the FDIC in 1992 was excused by the pre-existing material breach of Meritor with respect to the capital-related agreements of the parties, embodied in their final form of the 1991 WA. Meritor was obligated under the 1991 WA to maintain its primary and total risk-based capital ratios at specified minima, which included the remaining Western goodwill. This capital maintenance requirement, which Meritor had agreed to, was to be met "at all times during the term of this agreement." DX 557 at 2; PFOF 252. It is undisputed that,

or as modified, so as to establish a breach of contract. Further, plaintiffs' breach of the 1991 Written Agreement excuses any purported breach by the FDIC in 1992. Finally, plaintiffs have failed to establish any injury caused by the FDIC with regard to the alleged breaches and have failed to establish this Court's jurisdiction with respect to the 1988 breach allegation, which was raised more than six years after the claim accrued.

For these reasons, we respectfully request the Court to enter final judgment for the Government regarding plaintiffs' breach claims.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General

David M. Cohen / by Jeanne E. Davidson

DAVID M. COHEN
Director

F. Jefferson Hughes

F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

HENRY R. FELIX
JOHN N. KANE, JR.
KATHERINE KELLY
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

May 3, 2000

Federal Deposit Insurance Corporation
801 17th Street, N.W.
Washington, D.C. 20434 Division of Finance

March 31, 2006

MEMORANDUM TO: Floyd Robinson, General Counsel
Legal Division

FROM: Craig R. Jarvill, Chief (For)
Accounting Operations Section

SUBJECT: Goodwill Financial Reporting Package – Meritor Savings Bank

Attached is the Division of Finance's Goodwill Financial Reporting Package, depicting results as of December 31, 2005, for Meritor Savings Bank (Receivership Fund Code 4556).

Included in this package are three reports prepared specifically in support of the goodwill litigation:

Report 1 - Inception Pro Forma Recap
Report 1A - Mapping of Total Assets Inception Balance from Report #1 to Report #2
Report 2 - Statement of Assets and Liabilities in Liquidation (unaudited) - Adjusted 12/31/2005 Balances
Report 3 - Projected Receivership Results using Adjusted 12/31/2005 Balances

In addition, included is DOF's standard set of receivership financial statements for Meritor Savings Bank as of December 31, 2005 DOF releases these statements to the public upon FOIA or other requests.

Attachments

cc: Susan Bank, Legal Division
John V. Thomas, Legal Division

*THIS REPORT CONTAINS 12/31/2005 ESTIMATES BASED ON THE BEST INFORMATION AVAILABLE AS OF 12/31/2005. AS WITH ALL ESTIMATES AND PROJECTIONS, ACTUAL RESULTS MAY DIFFER.*

**REPORT 3**

## Meritor Savings Bank

**Projected Receivership Results Using Adjusted 12/31/2005 Balances**
**(Rounded In Dollars)**

**Receivership Fund Code 4556**
**Inception Date: 12/11/1992**

| | Adjusted 12/31/2005 Balances | Federal Income Tax Liability | Projected Receivership Results (using Adjusted 12/31/2005 Balances) |
|---|---|---|---|
| **Assets:** | | | |
| Cash/Investments | 574,124 | | 574,124 |
| Receivables | - | | - |
| **Assets in Liquidation** | | | |
| Securities | 138,988 | | 138,988 |
| Consumer Loans | - | | - |
| Commercial Loans | - | | - |
| Real Estate Mortgages | - | | - |
| Other Assets/Judgments | - | | - |
| Owned Assets | - | | - |
| Net Investments in Subsidiaries | - | | - |
| **Subtotal: Assets in Liquidation** | 138,988 | | 138,988 |
| Less: Estimated Loss on Assets | - | | - |
| Advances on Assets | - | | - |
| **Total Assets** | 713,112 | - | 713,112 |
| **Liabilities (Note 5):** | | | |
| **Administrative Liabilities** | | | |
| Accounts/Notes Payable | 360,562 | | 360,562 |
| Suspense/Escrow Accounts | - | | - |
| Due to FDIC for Service - Billed Expenses | - | | - |
| Due to FDIC for Borrowed Funds | - | | - |
| Estimated Litigation Losses - Probable | - | | - |
| Other Contingent Liabilities | - | | - |
| **Subtotal - Administrative Liabilities** | 360,562 | | 360,562 |
| **Proven Depositor/Creditor Claims** | | | |
| Due to FDIC Subrogated Deposit Claims | - | | - |
| Uninsured Deposit Claims Due Others | - | | - |
| Other Creditor Claims | (1,150) | | (1,150) |
| Estimated Interest Due to Others | 2,049,924 [a] | | 2,049,924 |
| Estimated Interest Due to FDIC | 29,066,340 [a] | | 29,066,340 |
| **Subtotal Proven Depositor/Creditor Claims** | 31,115,114 | | 31,115,114 |
| **Other Claims** | | | |
| Estimated Federal Income Tax Liability | - | 11,126,313 [b] | 11,126,313 |
| Other Subordinated Obligations | - | | - |
| Liabilities at Inception - Unproven | 903,905 | | 903,905 |
| **Subtotal - Other Claims** | 903,905 | 11,126,313 | 12,030,218 |
| **Total Liabilities** | 32,379,581 | 11,126,313 | 43,505,894 |
| **Net Assets / (Deficit):** | | | |
| Net Assets / (Deficit) At Inception | 166,739,609 | | 166,739,609 |
| Premiums Received / (Paid) at Resolution | 181,300,000 | | 181,300,000 |
| Asset - Related Equity Adjustments | 29,240,747 | | 29,240,747 |
| Liability/Claims - Related Equity Adjustments | (94,880,989) | (11,126,313) | (106,007,302) |
| Income / Loss of the Liquidation Since Inception | (314,065,836) | | (314,065,836) |
| **Total Net Assets/(Deficit)** | (31,666,469) | (11,126,313) | (42,792,782) |

[a] Post insolvency interest has been calculated on unpaid proven deposit and general trade creditor claims through 12/31/2005 using a rate of 6.00% per annum in accordance with Pennsylvania State Law. Interest on subordinated debt has been calculated using the contracted rate of 12.00% per annum. Interest will continue to accrue until unpaid proven claims have been paid in full.

[b] Tax returns and IRS transcripts for this receivership reflect federal income taxes due in the amount of $3,984,993. Another $7,051,011 in accrued interest and $90,309 in penalties have been estimated through 12/31/2005. Federal law provides for a deferral of these tax liabilities until such time as all deposit claims have been paid in full. Once deposit claims have been paid in full, the tax liability becomes due. The potential tax effect of any pending litigation settlement has not been considered.

FOR INTERNAL USE ONLY
MERITOR SAVINGS BANK
PHILADELPHIA, PA
Fund Number: 4556
Inception Date: 12/11/1992
Statement of Assets & Liabilities in Liquidation (unaudited)
For Period Ending: December 31, 2005
(Rounded in Dollars)

| | Current Balance | Inception Balance |
|---|---|---|
| **Assets** | | |
| Cash and Investments | $ 574,124 | $ 0 |
| Receivables | $ 0 | $ 0 |
| **Assets in Liquidation** | | |
| Securities | $ 138,988 | $ 907,729,286 |
| Consumer Loans | $ 0 | $ 429,651,885 |
| Commercial Loans | $ 0 | $ 347,968,548 |
| Real Estate Mortgages | $ 0 | $ 1,286,371,023 |
| Other Assets/Judgments | $ 0 | $ 350,871,590 |
| Owned Assets | $ 0 | $ 184,542,025 |
| Net Investments in Subsidiaries | $ 0 | $ 58,838,378 |
| **Subtotal - Assets in Liquidation** | $138,988 | $3,565,972,735 |
| Less: Estimated Loss on Assets in Liquidation (Note 3) | $ 0 | $ 0 |
| Advances on Assets | $ 0 | $ 0 |
| **Total Assets** | $713,112 | $3,565,972,735 |
| **Liabilities (Note 5)** | | |
| **Administrative Liabilities** | | |
| Accounts/Notes Payable | $ 0 | $ 0 |
| Suspense/Escrow Accounts | $ 380,562 | $ 0 |
| Due to FDIC for Service - Billed Expenses | $ 0 | $ 0 |
| Due to FDIC for Borrowed Funds | $ 0 | $ 0 |
| Estimated Litigation Losses - Probable (Note 7) | $ 0 | $ 0 |
| Other Contingent Liabilities (Note 5) | $ 0 | $ 0 |
| **Subtotal - Administrative Liabilities** | $380,562 | $0 |
| **Proven Depositor/Creditor Claims** | | |
| Due to FDIC for Subrogated Deposit Claims | $ 0 | $ 0 |
| Uninsured Deposit Claims Due Others | $ 0 | $ 0 |
| Other Creditor Claims | ($ 1,150) | $ 0 |
| Estimated Interest on Claims (Note 6) | $ 31,116,264 | $ 0 |
| **Subtotal - Proven Depositor/Creditor Claims** | $31,115,114 | $0 |
| **Other Claims** | | |
| Estimated Federal Income Tax Liability (Note 10) | $ 0 | $ 0 |
| Other Subordinated Obligations | $ 0 | $ 0 |
| Liabilities at Inception - Unproven | $ 903,905 | $ 3,399,233,126 |
| **Subtotal - Other Claims** | $903,905 | $3,399,233,126 |
| **Total Liabilities** | $32,379,580 | $3,399,233,126 |
| **Net Assets/(Deficit)** | | |
| Net Assets / (Deficit) At Inception | $ 166,739,609 | $ 166,739,609 |
| Premiums Received / (Paid) at Resolution | $ 181,300,000 | $ 0 |
| Asset - Related Equity Adjustments | $ 29,240,747 | $ 0 |
| Liability/Claims-Related Equity Adjustments | ($ 94,880,989) | $ 0 |
| Income / Loss of the Liquidation Since Inception | ($ 314,065,836) | $ 0 |
| **Total Net Assets/(Deficit)** | ($31,666,468) | $166,739,609 |
| **Total Liabilities and Net Assets/(Deficit)** | $713,112 | $3,565,972,735 |

**Estimated additional litigation losses considered reasonably possible: (Note 7)** $0

The accompanying notes are an integral part of these financial statements.

FOR INTERNAL USE ONLY
MERITOR SAVINGS BANK
PHILADELPHIA, PA
Fund Number: 4556
Inception Date: 12/11/1992
Statement of Operations (unaudited)
For Period Ending: December 31, 2005

| | Year-to-Date | Inception-to-Date |
|---|---|---|
| *Liquidation Revenues* | | |
| Interest on Cash and Investments | $ 16,966 | $ 62,757,949 |
| Interest and Late Fee Income on: | | |
| Securities | $ 0 | $ 5,152,040 |
| Consumer Loans | $ 0 | $ 3,375 |
| Commercial Loans | $ 0 | $ 32,901,332 |
| Real Estate Mortgages | $ 0 | $ 8,005,405 |
| Other Assets and Judgments | $ 0 | $ 331,642 |
| Recoveries from Charged-Off Assets | $ 20,867 | $ 52,440,671 |
| Professional Liability / Litigation Recoveries | $ 19,500 | $ 22,789,850 |
| Other Miscellaneous Income | $ 6,089 | $ 5,621,585 |
| Total - Liquidation Revenues | $63,442 | $190,007,762 |
| **Liquidation Expenses** | | |
| **Operations** | | |
| FDIC Service-Billed Expenses for: (Note 9) | | |
| Marketing / Closing / Settlement | $ 0 | $ 0 |
| Oversight / Claims / Accounting | $ 13,428 | $ 125,842 |
| Asset Marketing / Management | $ 695 | $ 65,976 |
| Investigation and Others | $ 353 | $ 44,894 |
| Salaries and Indirect Costs (Note 9) | $ 0 | $ 44,004,391 |
| Asset Servicing-Related Expenses | $ 0 | $ 8,238,489 |
| Asset Sales-Related Expenses | $ 0 | $ 1,126,760 |
| Legal and Other Professional Fees | $ 200 | $ 4,391,516 |
| Travel and Other Liquidation Expenses | $ 0 | $ 5,577,932 |
| Subtotal - Operating Expenses | $14,676 | $61,575,858 |
| Interest on FDIC Borrowed Funds | $ 0 | $ 691,078 |
| Other Interest Expense | $ 0 | $ 15,103,593 |
| Litigation Losses | $ 0 | $ 10,712,465 |
| Loss on Contingent Liabilities | $ 0 | $ 135,709,400 |
| **Total Liquidation Expenses** | $14,676 | $223,792,336 |
| **Net Income/(Loss) from Operations** | $48,746 | ($33,789,009) |
| **Net Income/(Loss)on Managed Assets** | | |
| Owned Assets | $ 0 | ($ 5,979,450) |
| Net Investments in Subsidiaries | $ 0 | ($ 3,584,335) |
| **Total Net Income/(Loss)on Managed Assets** | $0 | ($9,563,786) |
| **Gain/(Loss) on Disposition of Assets** | | |
| Securities | $ 0 | ($ 5,303,076) |
| Consumer Loans | $ 0 | ($ 1,308) |
| Commercial Loans | $ 0 | ($ 99,796,337) |
| Real Estate Mortgages | $ 0 | ($ 9,534,331) |
| Other Assets / Judgments | $ 0 | ($ 18,086,958) |
| Owned Assets | $ 0 | ($ 128,112,694) |
| Net Investments in Subsidiaries | $ 0 | ($ 9,878,337) |
| **Total - Gain/(Loss) on Disposition of Assets** | $0 | ($270,713,041) |
| **Income/(Loss) of the Liquidation** | $48,746 | ($314,065,836) |

The accompanying notes are an integral part of these financial statements.

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2006, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION" and "APPENDIX TO DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ F. Jefferson Hughes